IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

TEKELIA ARCHER GOSSETT and      §
CHRISTOPHER TODD GOSSETT,        §
                                 §
            Plaintiffs,           §
                                 §
VS.                              §      CIVIL ACTION H-11-508
                                 §
FEDERAL HOME LOAN MORTGAGE        §
CORPORATION AND WELLS FARGO       §
BANK,                            §
                                 §
            Defendant.           §

**OPINION AND ORDER OF SUMMARY JUDGMENT**

Pending before the Court in the above referenced action alleging breach of contract (loan modification agreement), wrongful foreclosure of Plaintiffs Tekelia Archer Gossett and Christopher Todd Gossett's home located at 7659 Alcomita Drive, Houston, Texas 77083, failure to provide proper notice of acceleration of loan and of default and time to cure in violation of Texas Property Code § 51.002(b) and (d), violations of the Texas Fair Debt Collection Act ("TDCA"), Texas Financial Code §§ 392.001 *et al.*, and of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Texas Business & Commerce Code Ann. §§ 17.41 *et seq.*, and negligent infliction of emotional distress, is a motion for summary judgment and motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (instrument #35) filed by Defendants Federal Home Loan Mortgage Corporation, which now owns the foreclosed property, and Wells Fargo Bank, N.A.

## Standard of Review

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 317, 323 (1986). The substantive law governing the claims identifies the essential elements and thus indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the non-movant bears the burden of proof at trial, the movant need only point to the absence of evidence to support an essential element of the non-movant's case; the movant does not have to support its motion with evidence negating the non-movant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant succeeds, the non-movant must come forward with evidence such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant "must come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A factual dispute is deemed 'genuine' if a reasonable juror could return a

verdict for the nonmovant, and a fact is considered 'material' if it might affect the outcome of the litigation under the governing substantive law." *Cross v. Cummins Engine Co.*, 993 F.2d 112, 114 (5th Cir. 1993).   Summary judgment is proper if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322-23; *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).

Although the court draws all reasonable inferences in favor of the non-movant, the non-movant "cannot defeat summary judgment with conclusory, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Center*, 476 F.3d 337, 343 (5th Cir. 2007).   Conjecture, conclusory allegations, unsubstantiated assertions and speculation are not adequate to satisfy the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).   Nor are pleadings competent summary judgment evidence. *Little,* 37 F.3d at 1075; *Wallace v. Texas Tech. U.*, 80 F.3d 1042, 1045 (5th Cir. 1996); *Adams Family Trust v. John Hancock Life Ins. Co.*, 424 Fed. Appx. 377, 81 & n.11 (5th Cir. May 11, 2011).

While a failure to state a claim is usually challenged by a motion for dismissal under Rule 12(b)(6), it may also constitute the basis for a summary judgment under Rule 56 because "the failure

to state a claim is the 'functional equivalent' of the failure to raise a genuine issue of material fact." *Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992).  In such circumstances, the motion for summary judgment challenging the sufficiency of the complaint will be "evaluated much the same as a 12(b)(6) motion to dismiss." *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993).

Because the Court concludes that Defendants are entitled to summary judgment on all claims, it does not address the Rule 12(b)(6) motion.

## Plaintiffs' Factual Allegations

On April 3, 2008 Plaintiff Tekelia Archer Gossett purchased her home and executed a promissory note (Ex. A to #35), requiring her to make monthly payments on the first day of each month beginning May 1, 2008, to lender Wells Fargo Bank, N.A.  That same day she and her husband, Christopher Todd Gossett, executed a Deed of Trust (Ex. B to #35).  Plaintiffs maintain that Mrs. Gossett continued to pay the monthly payments until late 2009, when Mr. Gossett lost his job.  Mrs. Gossett contacted Wells Fargo beginning in 2009 to obtain a modification of her loan.  She alleges that in February 2010, after she submitted a great deal of paperwork, and her mortgage payments were approximately two months in arrears, she and Wells Fargo agreed to a modification allowing her to make payments of $689.86, due the first day of each month, beginning on March 1, 2010.  This temporary modification was orally confirmed by

-4-

a Wells Fargo Home Mortgage agent, Carmen, identification #HLD, on February 9, 2010 and was recorded by Wells Fargo Home Mortgage. She further states that Wells Fargo Home Mortgage withdrew the first three monthly payments from her CitiBank account.

When she called Wells Fargo Home Mortgage on June 1, 2010 to make that month's payment, she spoke to representative Jackson, identification #FOU, at 6:45 p.m., a conversation that was also recorded. She asserts that she asked for written confirmation of her loan modification and was told it would be mailed from Wells Fargo Home Mortgage. She called again on July 1, 2010 and spoke to Jennifer, identification #SL196, also in a recorded conversation, and was again told that written confirmation would be sent from Wells Fargo Home Mortgage. On July 29, 2010, the same pattern repeated, this time with representative Antony, identification #AUG, and a supervisor, Candeta, who promised to follow up on the status of Mrs. Gossett's paperwork and referred her to a Ms. Estrada at Wells Fargo Home Mortgage. Mrs. Gossett continued to make payments of $698.86 by telephone on the first day of September and October, 2010, but still did not receive written confirmation of her loan modification. On October 29, 2010, when she called to make her ninth payment, Calvina told her that the amount due was $6,231.72 and that her home would be sold at a foreclosure auction on November 7, 2010. Plaintiff called back on October 30, 2010, spoke to representative Christina, identification #N58, who asked

Gossett to re-send proof of income, hardship letter, monthly expenses, and pay stub.   Plaintiff faxed the information immediately and received a delivery confirmation on her fax machine.   She called on November 1, 2010 to confirm that Wells Fargo Home Mortgage had received the documents and spoke to three representatives (Brian, #UHE, Tameka, #OST, and Odasha, #LOC), but none of them could locate the documents.   Mrs. Gossett called again on November 2, 2010, spoke to Laura, identification # 6UH, and tendered a $689.86 payment, but it was refused.   Laura informed Mrs. Gossett that the foreclosure sale had been postponed until December 7, 2010, but that she could not update the system or give Gossett information about the status of the modification paperwork, but told her to call back in a couple of days.   Mrs. Gossett did so on November 5, 2010 and spoke to Pamela, identification #PO8, who was unable to give her an update.   Again on December 6, 2010, she called and spoke to Shawna, identification #76U, again without success.   On December 7, 2010 Wells Fargo Home Mortgage sold the Gossett home at a foreclosure auction without providing proper notice of the foreclosure action and in violation of the modified payment agreement under which she had performed for eight months and under which Wells Fargo Home Mortgage had accepted her payments.

On December 8, 2010 Mrs. Gossett again called Wells Fargo Home Mortgage to check on the status of her loan and spoke to Jonathan,

a supervisor, identification #FMY, who informed Mrs. Gossett that the property had been sold at a foreclosure sale the day before, but that it should not have been foreclosed upon, that Wells Fargo Bank had all the documents requested since at least October 31, 2010, but had never placed them in review, and that Mrs. Gossett should have been given more options.  He also indicated that she should get a rescission of the foreclosure and that the foreclosure would be reversed.  Next Gossett faxed a letter to the correspondence resolution department, as instructed by Jonathan. On December 17, 2010 Mrs. Gossett again called Wells Fargo Home Mortgage and spoke to Lakeea, identification #T3W, who said that Freddie Mac had received the documentation on December 16, 2010 and had reviewed the documents.  Mrs. Gossett called again on December 20, 2010, spoke to Tisha, identification #JAO, who represented that she had been an employee there for at least three years and was familiar with the procedures, which required Wells Fargo to review documents within ten days but that it had failed to do so.  Tisha also told Gossett that Freddie Mac had granted the postponement of the November 2nd foreclosure date, that on November 5, 2010 the foreclosure was lifted and should not have gone forward on December 7, 2010, and that the modification should have been honored.  Tisha also informed Gossett that all of her documentation should remain valid for 60 days.  Nevertheless the Federal Home Loan Mortgage Corporation filed suit for eviction.

**Defendants' Motion for Summary Judgment (#35)**

Defendants contend that their summary judgment evidence conclusively establishes that Plaintiffs' allegations are false and that their claim for negligent infliction of emotional distress is not cognizable under Texas law.

First, Plaintiffs defaulted under the Note by failing to remit the required monthly mortgage payments when due.  In an effort to avoid foreclosure, on March 1, 2010 Tekelia Gossett and Wells Fargo entered into a trial loan modification under the Home Affordable Modification Program ("HAMP"), Ex. D.  Section 2B of Exhibit D at p. 2 states,

> [T]he Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligation under the Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to the extent permitted by applicable law[.]

Section 2E, *id.*, provides

> When the Lender accepts and posts a payment during the Trial Period it will be without prejudice and will not be deemed a waiver of acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents[.]

On May 9, 2010 Wells Fargo served Plaintiff at her home by certified mail, postage prepaid, with Notice of Default and Notice of Intent to Foreclose.  Ex. E, showing Plaintiff in default under

the Note in the amount of $2,935.99, that the default can be cured by tendering payment in certified funds not later than June 8, 2010, and that a failure to cure the default by that date will result in acceleration; see also Affidavit from Wells Fargo's Corporate Representative, Ex. J at ¶ 11.  On June 6, 2010, Wells Fargo served Plaintiff by certified mail with Notice of Default and Notice of Intent to Foreclose.  Exs. F; J, ¶ 12.  On June 11, 2010 Wells Fargo served Plaintiff at her home by certified mail with Notice of Default and Notice of Intent to Foreclose ("Notice of Default").  Ex. G (stating that Plaintiff is in default in the amount of $3,353.27, that the default can be cured by tendering payment in certified funds no later than August 10, 2010, and that failure to cure by that date will result in acceleration); J, ¶13. Again on August 15, 2010, Wells Fargo served Plaintiff at her home by certified mail with Notice of Default and Notice of Intent to Foreclose ("Notice of Default).  Ex. H (same warnings with due date of September 14, 2010); J, ¶14.

Plaintiffs failed to cure the default, and Wells Fargo posted the property for foreclosure.  Ex. J, ¶15.  Wells Fargo informed Plaintiff by letter of August 27, 2010 that Wells Fargo could not modify Tekelia Gossett's mortgage based on the results of the net present value calculation required by HARM.  Exs. I, ¶¶ 1-2; J, ¶19.  It proceeded with the foreclosure process.

On November 8, 2010 by certified letter Wells Fargo's

foreclosure representative informed Plaintiffs that the Note was accelerated and that the foreclosure sale would occur on December 7, 2010.  Exs. J, ¶19-22; K; L; M; N; O; P.   On August 3, 2010 the Federal Home Loan Mortgage Corporation bought the property at the foreclosure sale.  Exs. J; Q.  After the foreclosure, Plaintiffs remained in the home in violation of their obligations under § 22 of the Deed of Trust.   Therefore Federal Home Loan Mortgage Corporation filed a Forcible Entry and Detainer action to evict Plaintiffs.  Plaintiffs in turn filed this action in Harris County District Court asserting a number of claims arising from Wells Fargo's alleged failure to provide Notice of Default and Notice of Acceleration, as required by § 51.002(d) and (b) of the Texas Property Code, and seeking injunctive relief to stop the Eviction Proceeding.  Defendants removed the case on diversity grounds.

Defendants argue that their summary judgment evidence proves that Wells Fargo mailed all notices as required under state law, the Deed of Trust, and the HAMP Trial Loan Modification and that Plaintiffs' claims are factually groundless and without merit and should be disposed of by summary judgment.  Furthermore Plaintiffs' DTPA claims fail as a matter of law because the Gossetts are not "consumers" under the statute, and their claim for negligent infliction of emotional distress fails because Texas does not recognize such a claim.

To effect a lawful foreclosure on a property in Texas, a

-10-

mortgagee or trustee must strictly satisfy the notice requirements set forth in the deed of trust and prescribed by law. *Univ. Savings Ass'n v. Springwoods Shopping Ctr.*, 644 S.S. 2d 705, 706 (Tex. 1982). Plaintiffs assert that Wells Fargo did not provide the pre-foreclosure notice required by § 51.002(d) and (b) and paragraph 22 of the Deed of Trust. First Amended Complaint, ¶¶ 19-20. The Deed of Trust at issue here (Ex. B) provides,

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Agreement (but not prior to acceleration under Section 18 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date that the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Agreement and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

Ex. B, Deed of Trust, § 22. Section 51.002(d) of the Texas Property Code states,

> Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b).

Because Plaintiffs executed the HAMP Trial Loan Modification (Ex. D), Defendants maintain, Wells Fargo was not required to send any

other Notices of Default.  They point out that Plaintiffs do not
dispute that they defaulted under the terms of Note and Deed of
Trust.  Exhibit D, page 2, ¶¶ 2(B) and 2(E) specifically state that
Wells Fargo is not required to send an additional Notice of Default
before foreclosing.  Moreover the Deed of Trust, Ex. B, § 22
provides,

> If Lender invokes the power of sale, Lender or Trustee
> shall give notice of the time, place and terms of same by
> posting and filing notice at least 21 days prior to sale
> as provided by Applicable Law.  Lender shall mail a copy
> of the notice to the Borrower in the manner prescribed by
> Applicable Law.

> Section 51.002(b)(3) of the Texas Property Code reads,

> [N]otice of the sale, which must include a statement of
> the earliest time at which the sale will begin, must be
> given at least 21 days before the date of the sale by: .
> . . (3) serving written notice of the sale by certified
> mail on each debtor who, according to the records of the
> mortgage servicer of the debt, is obligated to pay the
> debt.

Defendants explain that the notice requirements in § 51.002
provide "a minimum level of protection for the debtor, and it
provides for only constructive notice of the foreclosure."
*Onuwuteaka v. Cohen*,846 S.W. 2d 889, 892 (Tex. App.--Houston [1st
Dist.] 2011, no pet.).  "Actual receipt of the notice is not
necessary." *WMC Mortgage Corp. v. Moss*, No. 01-10-00948-CV, 2011
WL 208977, *7 (Tex. App.--Houston [1st Dist.] May 19, 2001).
Instead, "service of a notice under [§ 51.002] by certified mail is
complete when the notice is deposited in the United States mail,
postage prepaid and addressed to the debtor at the debtor's last

known address." Tex. Prop. Code § 51.002(e).  The "mailbox rule"
is in accord with the Deed of Trust, which states that "any Notice
to Borrower in connection with this Security Instrument shall be
deemed to have been given to Borrower when mailed by first class
mail or when actually delivered to Borrower's address if sent by
other means." Ex. B, § 15.  Furthermore, "[t]he affidavit of a
person knowledgeable of the facts to the effect that service was
completed is *prima facie* evidence of service.  Tex. Prop. Code §
51.002(e).  Defendants' evidence conclusively establishes that
before the foreclosure sale Wells Fargo timely served Plaintiffs
with both the Notice of Default and the Notice of Acceleration in
accordance with the Deed of Trust and the Texas Property Code.
Defendants have attached as exhibits the Notices of Default and
Intent to Foreclosure sent by certified mail, postage prepaid, to
Tekelia Gossett on May 9, June 6, July 11, and August 15, 2010.
Exs. E-H.  These Notices state that Plaintiff is in default under
the Note in the amount specified, that the default can be cured by
tendering payment in certified funds no later that the date stated
therein, and that failure to cure timely will result in
acceleration.  Wells Fargo's records show that the May 9 and July
11, 2010 Notices of Default were delivered to Plaintiffs' address,
but that the June 6 and August 15, 2010 Notices were returned as
unclaimed.  Ex. J, Affidavit of Wells Fargo's Corporate
Representative, ¶ 11-14.  Exhibits K and L to the motion for

summary judgment are Notices of Acceleration and Notices of Substitute Trustee Sale ("Notices of Acceleration") sent by Wells Fargo's foreclosure representative, Barrett Daffin, via certified mail, postage prepaid, to Plaintiffs at their home on November 2010. These Notices of Acceleration expressly state that the foreclosure sale would be conducted on December 7, 2010, no earlier than 10:00 a.m. at the Harris County Family Law Center. See also Exs. Q, N, and O. Barrett Daffin's records are evidence that the Notices of Acceleration were delivered to the property address and were not returned to Barrett Daffin, although notice was valid when Barrett Daffin placed them in the mail and actual receipt was not required.

Because the summary judgment evidence conclusively establishes that Wells Fargo timely sent Tekelia Gossett Notices of Default by certified mail and a Notice of Acceleration via certified mail on November 8, 2010, Defendants are entitled to summary judgment on Plaintiffs' breach of contract claim.

Moreover Wells Fargo maintains that it did not prepare a written loan modification or forbearance agreement, did not execute a loan modification or written forbearance agreement, and did not promise that it would sign such an agreement in the future. Ex. J, Affidavit, ¶21. Furthermore, as noted *supra*, in a letter dated August 27, 2010 Wells Fargo clearly informed Tekelia Gossett that her mortgage could not be modified, based on the results of the net

present value calculation.  Exs. I; J (Affidavit, ¶ 19 and 21).

Plaintiffs claim they made an oral loan modification agreement with Wells Fargo.  As a matter of law under Texas's statute of fraud, a contract for the sale of real estate in not enforceable unless the contract is in writing and signed by the person to be charged.  Tex. Bus. & Com. Code §§ 26.01(a), 2601(b)(4).  If the amount in a loan agreement exceeds $50,000.00, the agreement is not enforceable unless it is in writing and signed by the party to be bound or that party's authorized representative.  Tex. Bus. & Com. Code  ¶ 26.02(b).  In the Gossetts' case, the loan documents involve the sale of real property and memorialize a loan in the principal sum of $77,000.00 so they are governed by the statute of frauds.  "Generally, if a contract falls within the statute of frauds, a party cannot enforce any subsequent oral material modification to the contract." *SP Terrace, L.P. v. Meritage Homes of Texas, LLC*, 334 S.W. 3d 275, 282-83 (Tex. App.--Houston [1st Dist.] 2010, no pet.), *citing Dracopoulas v. Rachal*, 411 S.W. 2d 719, 721 (Tex. 1967).  A modification is "material" if it alters the character or value of the underlying agreement.  *American Garment Properties, Inc. v. C.B. Richard Ellis-El Paso, LLC*, 155 S.W. 3d 431, 437 (Tex. App.--El Paso 2004, no pet.).  Finally, just above the signature line of the Note, Ex. A, in language mandated by section 26.02(e) of the Texas Business & Commerce Code, Tekelia Gossett contractually agreed and represented that

-15-

> THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL
> AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED
> BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL
> AGREEMENT OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL
> AGREEMENTS BETWEEN THE PARTIES.

Thus Defendants claim they are entitled to summary judgment on Plaintiffs' breach of contract/wrongful foreclosure claims. *See, e.g., Harris v. Wells Fargo Bank, N.A. (In re Harris)*, Bankruptcy No. 10-39586, Adv. No. 10-3684, 2011 WL 2708691 (Bkrtcy. S.D. Tex. July 11, 2011).

Because Plaintiffs are not "consumers" under the DTPA, Tex. Bus. & Com. Code § 17.45(4), that claim also fails. *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W. 2d 472, 478 (Tex. 1995).[1] To qualify as a consumer under the Act, an individual "must seek to acquire goods or services by purchase or lease" and "the goods or services acquired must form the basis of the party's complaint." *Fix v. Flagstar Bank, FSB*, 242 S.W. 3d 147, 159 (Tex. App.--Fort Worth 2007), citing § 17.45(4) and *Melody Home Mfg. Co. v. Barnes*, 741 S.W. 2d 349, 351-52 (Tex. 1987).  "A person who seeks only to borrow money is not a consumer under the DTPA because money is not a good or service." *Brown v. Bank of Galveston, Nat. Ass'n*, 930 S.W. 2d 140, 143 (Tex. App.--Houston [14th Dist.] 1996), *citing Riverside Nat'l Bank v. Lewis*, 603 S.W. 2d 169, 173-76 (Tex. 1980).

---

[1] To prevail on a claim under Tex. Bus. & Com. Code § 17.50(a), a plaintiff must prove that (1) he is a consumer, (2) the defendant engaged in false and misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages. *Boys Club*, 907 S.W. 2d at 478.

"An activity related to a loan transaction is a 'service' for DTPA purposes only if the activity at issue is, from the plaintiff's point of view, an objective of the transaction, not merely incidental to it." *White v. Mellon Mortg. Co.*, 995 S.W. 2d 795, 801 (Tex. App.-Tyler 1999, no pet,).

This Court agrees that Plaintiffs cannot satisfy the "goods or services" requirement for a claim under the DTPA in this action which arises out of an attempt to modify Tekelia Gossett's loan. *Kiper v. BAC Home Loan Servicing, L.P.*, ___ F. Supp. 2d ___, 2012 WL 3185968, *8 (S.D. Tex. Aug. 2, 2012)("'A person seeking only the extension of credit and nothing more is not a consumer under the DTPA because the lending of money is not a good or service.'"), *citing La Sara Grain Co. v. First Nat. Bank of Mercedes*, 673 S.W. 2d 558, 566-67 (Tex. 1984); *Watson v. Aurora Loan Services, LLC*, No. 4:11-CV-301-BJ, 2012 WL 3594233, *6 (N.D. Tex. Aug. 21, 2012)(holding that plaintiffs' search for a modification of an original loan does not satisfy the goods or services element of the DTPA)(and cases cited therein).

Defendants further contend that Plaintiffs do not have a claim under the TDCA and have no evidence to support their allegation that Defendants agreed to formally modify Tekelia Gossett's mortgage. She has not produced any written forbearance agreement or loan modification agreement because one does not exist. Plaintiffs admit that a Wells Fargo representative told Tekelia

Gossett on November 2, 2012 that the Property was posted for foreclosure on December 7, 2010.  First Amended Complaint, ¶13. Defendants' records reflect that the Notice of Acceleration was delivered to Plaintiffs.  On March 1, 2010 Wells Fargo and Tekelia Gossett did enter into a trial loan modification pursuant to HAMP. Ex. D (titled "**HOME AFFORDABLE MODIFICATION PROGRAM LOAN *TRIAL PERIOD* (Step One of Two-Step Documentation Process)**(emphasis added by Court).  Nevertheless on August 27, 2010 Wells Fargo notified her by letter that the mortgage could not be modified based on the results of the net present value calculation.  This evidence shows her allegations are false.  Ex, I; J, ¶¶ 1921.

Texas does not recognize a cause of action for negligent infliction of emotional distress.  *Boyles v. Kerr*, 855 S.W. 2d 593, 594 (Tex. 1993).  The Court agrees.

At the end of their motion, supported by an affidavit from their attorney, Branch M. Sheppard, Defendants request attorneys' fees and costs because Plaintiffs' claims of breach of contract, DTPA, TDCA, wrongful foreclosure and negligent infliction of emotional distress are legally and factually groundless.

### Plaintiffs' Response (#36)

Plaintiffs insist that Tekelia Gossett entered into an agreement with Wells Fargo under HAMP under which Wells Fargo agreed no refrain from foreclosing on her house as long as she made the monthly payments of $689.96.  She insists she made eight

payments in reliance on the modification agreement until she called on October 29, 2010 and learned her home would be sold at a foreclosure auction on November 7, 2010.  She contends that Wells Fargo Home Mortgage violated the agreement by foreclosing and that it acted in bad faith in failing to properly respond to her discovery requests.

### Defendants' Reply (#37)

Complaining of Plaintiffs' unsubstantiated, misleading, and erroneous allegations about Wells Fargo's discovery responses with examples, Defendants insist that Plaintiffs do not have any justiciable causes of action against Defendants and that Defendants are entitled to summary judgment or dismissal of this suit with prejudice.   The Court agrees that Defendants have correctly summarized the law and have met their burden of proof on summary judgment with regard to all of Plaintiffs' claims, while Plaintiffs have failed to produce any evidence that supports their claims and raises a genuine issue of material fact for trial.

Regarding Defendants' request for attorneys' fees and costs, the Note signed by Tekelia Gossett (Ex. A, § 6(E) allows the Note Holder to recover all costs and expenses in enforcing the Note, including reasonable attorney's fees, if the Borrower fails to pay as promised.  The affidavit (Ex. R) supporting the fee and expenses request from Defendants' attorney in the total amount of $24,810.01, lists the services he provided at an hourly rate of

$250.00.  The Court finds this amount very reasonable in light of the work required to resolve this essentially meritless suit.

Accordingly, the Court

ORDERS that Defendants' motion for summary judgment is GRANTED in full.  The Court further

ORDERS that Defendant's attorney in entitled to recover from Tekelia Gossett $24,810.01 as necessary and reasonable fees and expenses.

**SIGNED** at Houston, Texas, this  24th  day of  January , 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE